Good morning, Your Honor. May it please the Court. My name is Ian Barnes. I'm the officer of the State Appellate Defender on behalf of Mr. Hamilton. This Court should reverse for two reasons, and the first is that Mr. Hamilton was not proven guilty beyond a reasonable doubt, and the second is that he was improperly impeached with a prior conviction for a temporary from 1993, and then counsel was subsequently ineffective for failing to shield Mr. Hamilton from some of the prejudice of that conviction. To begin with the reasonable doubt argument, it's important to note at the outset that the statute with which Mr. Hamilton was charged criminalizes threats against public officials and their immediate family members, and the statute defines immediate family members as spouses or children. And Officer Harsey testified at trial that he has no spouse and he has no children. So the only relevant question is, did he have a reasonable apprehension of harm to himself? And I would suggest that the answer to that question is no, and I'd like to go through some of the facts of the case that outline that. To begin with, at the time that Mr. Hamilton began making these statements to Harsey, he was already handcuffed. There was no evidence he had any weapon. He never made any claims to have a weapon. He also never made any claims to have personal information about Officer Harsey that would allow him to actually follow through. He didn't say he knew where he lived, he knew what kind of car he drove, he knew what places he frequented in his free time. And in fact, Mr. Hamilton's proposed method of obtaining some of that information was, to put it bluntly, bogus. You can't use the Freedom of Information Act to find out information like that about officers. Didn't he threaten to kill him? He did. He did. And that should be, what you should account for is the fact that, one, he was extremely intoxicated. Two, after he was taken into custody, you can hear individuals in the background laughing. And someone at one point says, I haven't seen him around here in a while. And someone else responds, yeah, he's acting like a retard today. From the audio and visual, the audio-video recording of that incident, it's clear that people were not taking him seriously. They were laughing, they were joking about him, they were making fun of him. On top of that, Mr. Hamilton prefaced his statements to Harsey by saying, I'm about to get ignorant. And respectfully, no one prefaces serious threats with a preamble that essentially says, I'm about to say dumb things. But on top of that, you should also take into account Harsey's own testimony. And that was, at one point, a trial he testified, as a police officer, I get threatened a lot. But when he began threatening my family, saying that he was going to use FOIA to try and get information about my family, my mom, my dad, that concerns me more than if somebody just threatens me. And then he went on to say, at one point, I was afraid, but on cross-examination, that was clarified a bit. And he said, specifically, he was afraid when Mr. Hamilton started threatening his family. But it's important to note, again, that Officer Harsey doesn't have any family that's relevant under this statute. It's only him that we're concerned about. And he never expressed any immediate concern that I thought Mr. Hamilton was really going to follow through on this. I thought he was actually going to hurt me. He was concerned about his family. So based on that, I would submit that the State has not proven the reasonable apprehension element beyond a reasonable doubt. But barring that, that brings me to my second point, which is that other evidence came in at trial which seriously prejudiced him, and that was the first of all, that conviction was well outside of my domain. So it would ordinarily be, per se, inadmissible. And Mr. Hamilton did not open the door to that. And for that, I would cite to both Harris and Coleman, which were instances where a defendant did open the door. And that was based on him testifying to something that was contradicted by these prior convictions. For example, in Coleman, it was a defendant saying, I didn't commit this crime. I pled guilty to everything I've ever done. If I had committed this, I would have pled guilty. And the State was allowed to introduce convictions that showed otherwise. In Harris, a defendant said, I don't commit crimes. And the State was allowed to introduce evidence of convictions that showed he did, in fact, commit crimes. Did he open the door when he said, basically I'm a gang leader, I'm a murderer? No, Your Honor. Why not? Because the prior conviction does not contradict that testimony. His statement The prior conviction is a count of murder, right? It was, yes. But his statement was, the question to him on redirect was, have you ever murdered anyone? And he answered, truthfully and accurately, no. But more than that, the only reason I can surmise that counsel asked that question on redirect to begin with was to counter the inference that was now in the mind of the jury that Mr. Hamilton was, in fact, a murderer because that was the State's evidence through the recording and the State had crossed him about those statements and he acknowledged making those statements. So what counsel was doing was trying to remove that thought from the jury that he was, in fact, a murderer because that wasn't true. And if Mr. Hamilton had said, I don't have a violent past, I've never committed any violent crimes, I've never hurt anyone, that would be different. Then his conviction would be directly contradicting what he said. But what he said was, I haven't murdered anyone. Or I should say, he said no to the question, have you murdered anyone? That's not a contradiction. That conviction is not contradicting that testimony. But the prejudice goes far beyond that because no limiting instruction was ever given to the jury. So the jury heard about this conviction from 1993 and they were never told how to apply that conviction when weighing the evidence. And, in fact, the State encouraged the jury to consider this conviction as propensity evidence. The State's rebuttal finished with a comment that said, for someone that's been convicted of attempt murder, it's practically certain that Officer Harsey took that seriously. And that's where the problem is because counsel was entitled to a limiting instruction here. He did not ask for one. And then he did not object to the State's closing, which used this conviction as propensity evidence. And he also didn't object to the fact that the State was arguing the facts, not in evidence. There was no evidence that Officer Harsey knew about this conviction and that it should have somehow increased the seriousness with which he viewed these threats. In sum, counsel failed to protect Mr. Hamilton from some of the most prejudicial evidence possible, propensity evidence. The State arguing, because he committed this crime in the past, it's likely that he should, it's more likely that he would have been different. And I support that with the fact that the jury sent out a note during deliberations that said, is it true that we have to read, something to the effect of, is it true that we have to reach 100 percent consensus on all the elements of this crime? And that suggests that the jury was already on the fence. And them having access to a conviction with no limiting instruction that they never should have had access to in the first place, and that the State shouldn't have been able to argue as propensity evidence, really pushed them over the edge toward finding, toward a finding of guilt. Counsel, how long did the jury deliberate? I do not recall, Your Honor. I want to say it wasn't incredibly long, but I can't tell you for certain. But if Your Honors have no further questions, I would ask this Court to reverse and vacate his conviction because he would have had a fair trial, or an alternative remand for a new fair trial where he receives the effective assistance of counsel. Thank you, counsel. In the case of the Court, my name is Sharon Shanahan, and I represent the people of the State of Illinois. With the Court's permission, I'm going to focus my argument on consideration of the closeness of the evidence, as argued in Issue 2, and the admission of the defendant's conviction for attempt murder, which is primarily in Issue 3 and somewhat in Issue 4. As the State concedes that the trial court erred in the 431B admonishments, so the question here is whether there is plain error. For many months now, the State says plain error, the defendant says SEBI, and they say the evidence is not close. But it's very important what is left out of an argument that says SEBI says if the evidence is not close, you have to reverse. SEBI really doesn't say anything very new. SEBI just pretty much says what Heron says, its ultimate conclusion of balancing the two witnesses, two groups of witnesses, is what kind of sticks out about it. But it is important to note that under Heron and under SEBI, first of all, it is the defendant's burden to prove that the evidence was not close. And he bears this burden of persuasion with respect to the prejudice. Here is what Heron says, here is what SEBI said, quoting Heron, in order to carry his burden of establishing plain error, the defendant must show that the evidence is so closely balanced that the error alone severely threatened to tip the scales. Now, in the defendant's argument, he says, it might have tipped the scales. He doesn't say that he's carried his burden of proving that it did, and he doesn't say anything that it severely tipped the scales. What about the note that the jury sent with their question? And then also, I'll come back to you, I'm trying to remember, how long did the jury deliver? Two hours. So they didn't deliver very long. We never know about jury notes. First of all, that doesn't necessarily indicate that they were having a problem. They may have, as short a period of time as they are, I mean, deliberated, it may have been that this note came out when they were just looking at all these instructions, which, let's face it, although they're supposedly intended for laymen to understand, they can be very confusing. So we don't know why they said that, but we do know that in a very short period of time, they found all of the elements beyond a reasonable doubt. Does that answer your question? Thank you, Your Honor. So, as I said, the defendant only says that, and this is a quote from his brief, that, but for this error, the scales could have been tipped. That's not good enough. He has to establish that the scales were tipped severely. I mean, it's not this, it's this. And it's the defendant's burden. And it has to be, as Herron says, so as to severely threaten the fairness of the trial, and that its impact on the result is potentially dispositive. We just don't have that here. And here we have the jurors, excuse me, here we have the defendant, well, I'll get it right, police officer Harsey, saying that he feared for himself, he feared for his family, and that he believed that the defendant could get this information through the Freedom of Information Act. Notably, his boss, Sergeant Draper, also said that, and quite honestly, Your Honor, I didn't know whether you could get personal information from the Freedom of Information Act until I looked it up for this case. Defendant says that he didn't have family except for mother and father, which could not have been threatened. The jury was very specifically instructed on that specific point. They were told what the statute said, and they were told that family meant wife and children. So they knew that when they were arguing this. And contrary to the defendant's argument, Officer Harsey did have a reasonable apprehension of immediate and future bodily harm. As was court noted, he did say, I'm going to kill you, Officer Harsey. Not, I'm going to shoot you guys. That's where you see some of the cases where it's found to be an insufficient threat. He said he was going to kill him. He called him by name. He said he was going to snipe him. And Officer Harsey took this to mean that he intended to shoot him from a distance. For example, Officer Harsey, as you noted, he did say, the defendant did say he was a gang leader. He said you are fucking with a murderer. And Officer Harsey also testified that this was a with what Officer Harsey was saying at the time, or feeling at the time that this threat was going on. And I think it's important to note that his apprehension is corroborated by a superior officer, Sergeant Draper. Draper said that when Officer Harsey started to place the defendant under arrest, his demeanor changed and he became very violent. This is a quote from Sergeant Draper. It was almost like he was visualizing attacking Patrolman Harsey in particular and explaining in detail how he was going to do that. As I said, Draper also believed that the defendant could obtain personal information through the Freedom of Information Act. In his reply, the defendant argues that, well, this doesn't apply to what Officer Harsey thought. Now, it's, I guess, kind of a reasonable man standard. But the statute itself says this has to be a unique threat. And if it has to be a unique threat, then you have to consider what did this particular person think. And this particular person thought you could get that information from the Freedom of Information Act. Now, against all of this, oh, excuse me, the second thing that corroborates Officer Harsey's testimony is the video itself. It demonstrates the hatred and the venom displayed by this defendant and his threats to find out personal information about where Harsey was. And by the way, this could be a future threat. It doesn't matter that when he made these threats he was handcuffed. This could be a future threat that someday down the road he's going to be on a rooftop with a rifle aimed at Officer Harsey. And so the video did consider that and the jury could consider whether this was a reasonable apprehension of future bodily harm. And against this is the defense testimony that he was typically respectful and subordinate, that he hadn't been in a gang, that he had never murdered anyone, that he was drunk, and that he felt intimidated. He sought to leave the impression that he was not a violent man. And as the State's brief, I'm running short on time, as the State's brief addresses, it was proper for the State to then come back and say, no, you're not a nonviolent man. You're not a peaceful man. Here's proof of it. I'd like to briefly note that in the State's argument about whether this can come in substantively, the State cited Professor Graham's handbook on evidence. Counsel says that this is just secondary. Don't pay any attention to that. And in Ray Schapp, the court said that if the viewing court is entitled to rely on secondary authority when there is no controlling primary authority, it went on to note that if the work has been a trustworthy scholarly authority for a long time, it may properly be considered in interpreting the evidence. I checked this morning. The Supreme Court has cited Professor Graham's handbook well over 100 times. And when you throw in all the appellate courts, it approaches 1,000 times. Any questions, Ron? Thank you. Thank you, counsel. Counsel? Your Honor, I'd like to start. I think there's maybe a little bit of confusion about what standards I'm talking about. When I was arguing ineffective assistance of counsel earlier, of course the standard is whether there was a reasonable probability that the outcome would have been different. 431B and the first round of plain error is obviously different. And I think I disagree with opposing counsel about what the language is. And that language is when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales. And that's exactly what I claimed in the opening brief, that the error with Mr. Hamilton's prior conviction threatened to tip the scales. We don't have to establish that it would have tipped the scales, that it could have, that it threatened to do so. I'd like to, with respect to Mr. Hamilton's prior convictions, I'd like to talk about some of the cases cited by the state, because I think they stand for the same exact propositions that Harris and Coleman stand for, which were in Mr. Hamilton's brief. The first one is Woodard, and in that one the defendant testified that police never told him why they arrested him. And so the state was allowed to bring in exactly why he was arrested, and that entailed being arrested for fleeing arrest, evading arrest. In Bunch, the defendant testified he'd been arrested for auto theft, and the state was allowed to prove that he had, in fact, been convicted of auto theft. And in Miller, the defendant testified he never owned a gun, then he said he did own a gun, but it belonged to a friend, and then he said he'd been arrested once in connection with guns, but the guns belonged to his brother-in-law. And the state was allowed to introduce his conviction for unlawful use of a weapon. Those all, along with Coleman and Harris, those all stand in stark contrast to what happened here, which was Mr. Hamilton answering truthfully that he had never murdered anyone, and his conviction for attempt murder doesn't contradict that. And he also, the fact that he said he was a respectful person is not the same as saying he's peaceful or nonviolent. And as I said before, if he had testified, I'm not a violent person, I've never done anything violent in my life, I've never hurt anyone, then absolutely his conviction would have been relevant, just like all these cases, Woodard, Bunch, Miller, Harris, Coleman. But that's not what happened here. I'd also like to just briefly touch on the reason without argument again. And regardless of what Mr. Hamilton said, how vehemently he said it, the relevant question is whether Harcey's apprehension was reasonable. And he says he gets threatened a lot. It's routine for him. And his primary concern throughout his testimony always was his concern for his family. Now, obviously, Harcey didn't understand that the statute doesn't cover threats to family members like parents, uncles, and whatnot. But that's what's relevant is threats to himself and his immediate family, spouses, or children. He doesn't have spouses or children. The question is, was his apprehension reasonable? And his testimony is insufficient to ever establish that he was genuinely afraid. What he says was, well, I took that to mean he was going to snipe me from a distance. That doesn't mean he took it seriously. And that's the fundamental important question here. Did he take it seriously? Was there a reasonable apprehension that some harm was going to befall him? And based on all the circumstances, I would suggest no. He was handcuffed. He was going to be in custody. For all of the reasons that I listed earlier, Officer Harcey's apprehension was not reasonable, and he never testifies to any real fear that harm was going to befall him. So, based on that, I would ask this Court to reverse the judgment of the circuit court, vacate his conviction, or, in the alternative, grant him a new trial. Thank you, Officer. Thank you. We appreciate briefs and arguments of counsel. We will take a piece on the replacement issue ruling in due course. We're going to take a short recess.